UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNIE BRYANT,

    Petitioner,

Case No. 09-12824

v.

Honorable Patrick J. Duggan

DAVID BERGH,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

On July 17, 2009, Bennie Bryant ("Petitioner"), a state prisoner currently confined at the West Shoreline Correctional Facility in Muskegon Heights, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for criminal sexual conduct, first degree (person under age 13), Michigan Compiled Laws § 750.520b(1), aggravated stalking, Michigan Compiled Laws § 750.411i, and assault and battery, Michigan Compiled Laws § 750.81. For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

### I. Factual and Procedural Background

Petitioner was convicted of the above offenses following a jury trial in Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

> [Petitioner]'s criminal sexual conduct conviction arises from the sexual penetration of the victim, his daughter, in 1990. According to the victim, she was five years old at the time, and while she and [Petitioner] were alone in the house, [Petitioner] asked her if she wanted to watch a movie. They went into [Petitioner]'s bedroom, and [Petitioner] played a pornographic movie on the television. They both got into bed and the victim fell asleep. When she awoke, [Petitioner] was lying on top of her covering her mouth with his hand. He then removed her clothing and put his penis in her vagina. The victim testified that this went on for about an hour or an hour and a half. The victim testified that she then walked to a neighbor's house alone and stayed with the neighbor for about a day. She claimed that she told no one about the incident until she was thirteen years old, and, at that time, she received her first medical examination for sexual assault. No medical records were introduced at trial.
>
> [Petitioner]'s assault and battery and aggravated stalking convictions arise from events in April 2005, fifteen years after the sexual assault. The victim testified that, on three occasions, she encountered [Petitioner], who was driving a van, as she was walking to work in the morning. The first time she saw him, she ran to work. The second time she saw him, she ran into an abandoned building, and [Petitioner] searched for her but did not find her. The third time, on April 27, 2005, she started to run, but fell. [Petitioner] approached on foot and started kicking her. The victim testified that police happened upon the scene, apprehended [Petitioner], and asked the victim if she wanted to go to the hospital. However, the victim declined and went to work. When she left the scene, [Petitioner] was still in the police car.
>
> The victim's foster mother testified that on April 29, 2005, and May 1, 2005, while she lived with the victim, anonymous notes arrived at her home. The anonymous letters were threatening, offensive, and sexually explicit. They expressly referred to the writer's sexual abuse of the victim when she was young and included details about the abuse and a complaint that the victim was "stolen" from the writer by the foster care system. The notes were signed, "guess who." A handwriting expert compared copies of the notes with samples from [Petitioner]'s hand and pointed out every similarity between letters and groups of letters she found. The similarities covered almost every letter of the alphabet and included several groups of letters. She testified that there were more similarities than differences between the samples.

*People v. Bryant*, No. 270900, 2008 Mich. App. LEXIS 472, at *1-3 (Mich. Ct. App. Mar. 6, 2008) (per curiam) (footnotes omitted).

Petitioner appealed his conviction in the Michigan Court of Appeals, raising the

following claims:

> I. [Petitioner] was deprived of his right to the effective assistance of counsel when his trial attorney failed to investigate and present his defense by not obtaining the following: (1) medical records of the victim; (2) police records of a previous investigation of alleged sexual abuse; (3) evidence establishing that the victim did not walk as far as she said she did after an assault; and (4) police reports that [Petitioner] was not arrested in the victim's presence in 2005 as she claimed.
>
> II. [Petitioner] was denied due process, a fair trial, and his right to present a defense when the prosecutor failed to disclose evidence favorable to the [Petitioner] in violation of *Brady v. Maryland*. The evidence included: (1) medical records demonstrating there was no evidence of penetration; (2) Family Independence Agency reports stating there was no sexual abuse; and (3) a prior police investigation of the alleged crime wherein [Petitioner] passed a polygraph examination, a warrant was denied, and the victim denied knowing if the [Petitioner] had penetrated her.
>
> III. [Petitioner] was denied his right to due process under the federal and state constitutions when there was a six-year delay between the investigation and prosecution of [Petitioner].

Petitioner's conviction was affirmed on appeal. *Id.*, *lv. den.* 482 Mich. 896, 753 N.W.2d 172 (Mich. 2008). Petitioner filed the instant petition for writ of habeas corpus on July 17, 2009, asserting three claims of ineffective assistance of counsel and one claim of prosecutorial misconduct.

## II. Standard of Review

Federal statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable

3

>application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S. Ct. at 1521. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ----, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 2067 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

4

correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring in judgment)). "[R]eadiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24, 123 S. Ct. at 360. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

**A. Ineffective Assistance of Counsel**

To demonstrate that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two-prong test. First, he must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the

5

wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065. In other words, Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Second, Petitioner must show that the deficient performance prejudiced his defense. *Id.* at 687, 104 S. Ct. at 2064. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable - a substantially higher threshold.'" *Knowles v. Mirzayance*, --- U.S. ----, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). Thus, a "doubly deferential judicial review" applies to *Strickland* claims brought by habeas petitioners. *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003)). This means that on habeas review of a state court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, --- U.S. ----, 130 S. Ct. 1473, 1485 (2010)).

6

Because of this doubly deferential standard, the Supreme Court has indicated:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 788. "[R]elying on 'the harsh light of hindsight' to cast doubt on a trial . . . is precisely what *Strickland* and AEDPA seek to prevent." *Id.* at 789.

Plaintiff first asserts that his attorney failed to subpoena medical records showing that penetration did not occur. The Court of Appeals engaged in a detailed and thorough analysis of this claim that bears repeating here:

> [Petitioner] first argues that counsel was ineffective for failing to obtain the victim's medical records pertaining to the alleged assault and failing to hire a medical expert to explain them. [Petitioner] points to three medical records that came to light during the post-trial evidentiary hearing. At the evidentiary hearing, [Petitioner]'s trial counsel testified that [Petitioner] had told him that the victim had been examined at a hospital and the results would be favorable to [Petitioner]. He testified that he knew about a 1998 medical examination, but was not aware of a 1991 examination. Counsel testified that he decided not to seek any additional records because he did not know what they would show and feared uncovering evidence damaging to the defense that could be used by the prosecutor.
>
> The records obtained by post-trial counsel are nearly indecipherable and none of them places [Petitioner] in a kind, fatherly light. First, there is an emergency room record from Children's Hospital of the Detroit Medical Center, dated November 8, 1991. Under "Diagnosis," the report reads "Alleged Physical Abuse." Dr. Patrice Harold testified at the post-trial evidentiary hearing that the report includes the following notation: "Vaginal: No laceration, bruising, hymen intact." However, she also testified that the size of the victim's vagina when she was five could mean that the victim suffered extremely painful sexual penetration that would not destroy the hymen. The alleged conduct, at this point, could have occurred one year or more before the examination, which also affected the examination's ability to detect the abuse. Worse for [Petitioner], the report demonstrated a much speedier response to alleged sexual abuse than originally anticipated: less than one year compared with the

eight-year delay presumed and argued at trial. The report also contains claims that the victim had been "beaten up" by her sixteen-year-old brother, and reflects the allegation that he had apparently been "putting needles in her legs." It refers to photographs taken of the injuries as well as x-rays of her facial bones.

Without including these volatile 1991 records, [Petitioner]'s trial counsel was able to elicit that the victim underwent a physical examination for sexual abuse in 1998, and that the prosecutor, who had the burden of proof, did not present any of those records into evidence. Without the records, defense counsel adeptly argued that the case was not brought to light for eight years, and then only after family strife had divided the home. With this void in the prosecutor's proofs, defense counsel indirectly attacked the victim's claims that she was an extremely young child who suffered extreme and prolonged sexual contact. Defense counsel repeatedly argued that such contact would have required medical attention, and yet none was sought for eight years, and nothing was presented that indicated that the 1998 examination found anything amiss. Under the circumstances, [Petitioner] fails to demonstrate that the presentation of the 1991 medical records would have provided an additional defense or otherwise altered the outcome of trial, even if they had been fully available to defense counsel and correctly deciphered.

The other records shed even more light on the grim situation facing [Petitioner]'s trial counsel. The second record is dated October 30, 1998, and it plainly refers to an event of sexual abuse that was less than three weeks old. The report states that the victim, a thirteen-year-old female, presented with claims of sexual abuse. The victim described in detail how she awoke with her clothes off and how her legs were wet with a white substance. Contrary to [Petitioner]'s adamant assertions, there is no indication that this record referred to the events in 1990 rather than a separate, more recent, event in 1998. The report reflects that the patient initially refused a pelvic exam, but then states that the victim's hymen was thickened and that her rectum lacked any scarring. The third report is dated December 3, 1998, and it appears to state that the pelvic region did not indicate any traumatic force and that there was no evidence of tears or other injury. However, that report also refers to the other report that reflects a recent accusation of sexual assault. Dr. Harold did not address all the contents of the records, but she affirmatively stated that the records were inconsistent with sexual abuse. On cross-examination, she conceded that an adult male could penetrate a five-year-old girl's vagina deeply enough to cause extreme pain, but not enough to tear the hymen or cause other noticeable damage.

The record reflects that counsel was aware of a 1998 allegation of abuse that

8

> had received medical attention and that the examination did not substantiate any claims of sexual assault. During trial, defense counsel carefully argued the case in this light – no physical or medical evidence substantiated the allegations of severe abuse – without raising the possibility that the 1998 examination was the product of a fresh set of accusations or occurrences. The record reflects that [Petitioner] was also aware of a full investigation of the 1998 allegations of abuse, and he knew that the prosecutor decided not to charge [Petitioner]. Counsel testified at the post-trial hearing that the 1998 records would not have been relevant to the incident that allegedly occurred in 1990 and that he did not want to draw the jury's attention to another alleged incident of abuse.
>
> Clearly, the decision to leave well enough alone regarding the 1998 investigation and medical records was a matter of trial strategy. Placing the victim's claim of repeated abuse before the jury had serious risks of backfiring, especially considering that defense counsel could harp on the prosecutor's lack of direct evidence without raising anything else that might damage the case. Similarly, even if deciphered and ultimately used as appellate counsel advocates, the 1991 medical records would not have added much, if anything, to the defense. Instead, they would have demonstrated that the victim pursued her allegations of abuse relatively quickly and before most of the later claims of unfair parental treatment had tarnished her credibility. The records also undermined [Petitioner]'s theory that the victim reported a series of fictional events, because the 1991 records appear to reflect a very real beating at the hands of a much older brother. Under the circumstances, [Petitioner] has failed to demonstrate deficient performance by counsel's failure to obtain the 1991 medical records or by his decision to avoid the 1998 medical records, and [Petitioner] further fails to persuade us that the claimed deficiencies had any effect on the outcome of his trial.

*Bryant*, 2008 Mich. App. LEXIS 472, at *7-13 (citations omitted).

 The state court reasonably applied the *Strickland* standard to Petitioner's claim. Counsel's decisions regarding which evidence to present are presumed to be matters of trial strategy. *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). The state court noted that counsel's strategy was to argue that the victim had waited nearly eight years to bring her allegations to light, and did so only in the wake of "family strife." This allowed him to attack the prosecutor's lack of direct evidence without exposing evidence of subsequent

9

sexual misconduct and physical abuse. Counsel's choice not to pursue the medical records cited by Petitioner was entirely consistent with this strategy. The state court reasonably held that counsel's performance fell within the "wide range of reasonable professional assistance" acceptable under *Strickland*. Likewise, the state court reasonably concluded that Petitioner had failed to show that he was prejudiced by counsel's failure to obtain and present the medical records at issue. The Court of Appeals noted that the medical records corroborated the victim's claims of physical abuse and raised allegations of more recent sexual misconduct. The court also pointed out that the medical records did not preclude a finding that Petitioner had penetrated the victim. Petitioner has failed to demonstrate a reasonable probability of a different outcome had these medical records been presented.

Plaintiff next claims that his attorney unreasonably failed to present police reports demonstrating that he was not arrested following the alleged physical assault on April 27, 2005, as the victim had claimed. The Court of Appeals dismissed this claim:

> [Petitioner] next argues that counsel was ineffective for failing to present evidence that [Petitioner] was not arrested until May 10, 2005, which [Petitioner] argues would have impeached the victim's testimony that [Petitioner] was arrested immediately following the alleged physical assault on April 27, 2005. However, defense counsel extensively argued the lack of police corroboration for the victim's account of the unusual events, and he elicited from the officer in charge that the interview following [Petitioner]'s arrest did not occur until May 10, 2005. Under the circumstances, [Petitioner] fails to indicate how his trial counsel could have done more to "prove" that the events never transpired because of the delay between the street fight and his actual arrest. As the trial court pointed out, an individual may be taken into custody without being booked and without any report issuing. Therefore, [Petitioner] fails to persuade us that the jury would not have convicted him but for defense counsel's inadequate performance.

*Bryant*, 2008 Mich. App. LEXIS 472, at *15-16.

10

The state court's decision with respect to this claim was reasonable. Petitioner's counsel questioned Carolyn Nichols, eliciting testimony that the interview following Petitioner's arrest occurred on May 10, 2005. Trial Tr., 31, Apr. 20, 2006. The Court cannot conclude that counsel performed deficiently in failing to present unnecessarily cumulative evidence. The state court concluded that Petitioner had failed to demonstrate prejudice, as the police reports would not necessarily disprove the victim's testimony that Petitioner had been taken into custody. This ruling was not objectively unreasonable and should not be disturbed on habeas review.

Petitioner asserts that his counsel was ineffective for failing to present police reports indicating that charges were not pursued against him after a 1998 investigation. The Court of Appeals concluded that this claim lacked merit:

> [Petitioner] next argues that counsel was ineffective for failing to obtain police records of an investigation conducted in response to allegations of sexual abuse made by the victim in 1998. Particularly, [Petitioner] argues that defense counsel should have obtained the results of a polygraph examination administered to defendant in 1998, the denial of a warrant request in 1999, and a letter written by an investigator stating that the 1998 investigation had been closed without charges being filed. However, [Petitioner] fails to demonstrate how any of these items would have survived rudimentary challenges to their admissibility, and he fails to account for the fact that raising the issue of the investigation in 1998 would have necessarily raised the issue of the victim's later allegations of abuse.
>
> Whatever benefit [Petitioner] could have potentially gained in undermining the victim's credibility by bringing forth the documents, he most certainly would have lost in limiting the case to a single, potentially exaggerated or misremembered, fifteen-year-old incident belatedly asserted by a twenty-year-old estranged daughter under highly questionable circumstances. [Petitioner] would also have destroyed the illusion that the allegations lay essentially dormant for seven years until after the victim attempted, unsuccessfully, to reconcile with [Petitioner]. These strong arguments did not carry the day, but they would not have existed at all if [Petitioner] had raised

11

> issues regarding a second accusation and a second legal defense in 1998. [Petitioner]'s argument also ignores evidence that a prosecutor had discussed the polygraph issue with his trial attorney and informed him that, before the successful polygraph examination in 1998, [Petitioner] had allegedly failed a polygraph examination following the 1990 incident. Presenting a record of the 1998 investigation to the jury also would have drawn more attention to [Petitioner]'s attempts to orchestrate his defense, because then his tape-recorded allusions to his earlier, successful defensive efforts would have had an even better defined and more insidious context. Under the circumstances, [Petitioner] fails to demonstrate that any of the documents regarding the 1998 police investigation, even if somehow admissible, would have ultimately helped his defense against the alleged events of 1990.

*Bryant*, 2008 Mich. App. LEXIS 472, at *13-15 (footnote omitted).

The state court reasonably determined that Petitioner failed to demonstrate prejudice, as there is no indication that the results of the investigation of the alleged 1998 assault would have assisted Petitioner's defense of the alleged 1990 assault. Counsel's strategy was to limit the focus of the trial to the earlier incident, and introducing the results of the 1998 investigation would have undermined this strategy. This strategy was ultimately unsuccessful, but that is not the test under *Strickland*. Petitioner fails to address the state court's conclusion that these records were likely inadmissible and simply speculates that presentation of these records would have led to his acquittal. Having found no prejudice, the state court reasonably concluded that Petitioner's claim must be denied.

**B. Prosecutorial Misconduct**

Petitioner asserts that the prosecutor withheld the victim's medical records, which showed no physical evidence of sexual assault. The Court of Appeals, in addressing this claim, stated:

> [Petitioner] next argues that he was denied due process because the prosecution failed to disclose material evidence that was favorable to [Petitioner]. We

disagree. To establish that a prosecutor has committed a violation of the policies set forth in *Brady v. Maryland*, a defendant must establish: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

With regard to the medical records, [Petitioner] has not established what evidence the state possessed, much less that it withheld any record that would have benefited [Petitioner]. The prosecutor testified that the November 8, 1991, record from Children's Hospital was in her file, and that she gave defense counsel the opportunity to inspect the file. Likewise, any other scraps of medical records from other sources were reportedly in the file.

This leads to the second problem with [Petitioner]'s arguments. Even assuming that the state possessed medical records that were favorable to him, [Petitioner] has not shown that he could not have obtained this evidence with reasonable diligence or that the prosecutor prevented its discovery. On the contrary, the prosecutor testified that when defense counsel took over the case from his predecessor, he received everything the previous attorney had already obtained, including materials the prosecutor had delivered. The prosecutor also met with [Petitioner]'s new counsel to go over discovery in an effort to avoid delaying the trial. At that time, she gave defense counsel her entire file, including the partial medical records she had obtained from the victim's caretakers, and allowed him to make copies of anything he wanted. She did not keep track of the documents defense counsel copied and did not know whether he had copied anything. All the records at issue came from one hospital, so a record request to that hospital should have led to any records that [Petitioner] desired.

[Petitioner] also alleges that the prosecution withheld several documents pertaining to the 1998 investigation into allegations that defendant sexually abused the victim. These include a letter written by the initial investigating officer, dated February 8, 1999, stating that the investigation had been closed and no charges were being filed against [Petitioner]. [Petitioner] also claims he was barred access to the victim's first statement to police made on December 5, 1998, the results of the polygraph examination administered to [Petitioner] on February 9, 1999, and the investigating officer's case notes, which refer to the prosecution's denial of a warrant after the 1998 investigation. However, trial counsel clearly testified that he believed that all the events transpiring after 1998 were related to a second incident of sexual misconduct, so they were not

13

>relevant to the case.  This explained why counsel never sought the records of the 1998 investigation and did not receive any records of that investigation.  In addition, he said that [Petitioner] told him that he took a polygraph examination during the investigation, but did not tell him that he had passed.  Counsel testified that he had not attempted to obtain the polygraph examination and the result.  Under the circumstances, [Petitioner] can only speculate that the prosecution would have withheld this documentation from defense counsel, if defense counsel had requested it.

*Bryant*, 2008 Mich. App. LEXIS 472, at *17-20 (citations omitted).

 The state court correctly laid out the elements of a prosecutorial misconduct claim, *see Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999), and reasonably applied the law to the facts at hand.  The Court of Appeals concluded that the medical records were not favorable to Petitioner, as they were either irrelevant to the alleged 1990 assault or conflicted with Petitioner's theory of the case.  Furthermore, because Dr. Harold's testimony indicated that the alleged assault may not have resulted in observable injury, the medical records are not necessarily exculpatory.  Petitioner has failed to demonstrate that he could not have obtained the medical records through reasonable diligence, as his counsel was permitted to liberally copy any and all records from the prosecutor's case file.  Petitioner argues that his failure to request these records from the hospital is not fatal to his claim, but the government is not required to furnish a defendant evidence which he can obtain for himself through reasonable diligence.  *See United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000) (citing *United States v. Frost*, 125 F.3d 346, 382 (6th Cir. 1997)).  As noted above, the prosecutor's willingness to allow Petitioner's counsel to copy records from her file undermines any claim that evidence was suppressed.  The state court also reasonably concluded that Petitioner failed to show

14

prejudice, noting that these records were not particularly favorable to Petitioner. Petitioner has therefore failed to demonstrate prosecutorial misconduct.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S. Ct. at 1034 (2003). For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. The Court therefore declines to issue Petitioner a certificate of appealability.

## V.  Conclusion

The Court concludes that the state court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED WITH PREJUDICE;**

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a

certificate of appealability.

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Dated: September 19, 2011
Copies to:

Bennie Bryant, #359946
West Shoreline Correctional Facility
2500 South Sheridan Drive
Muskegon Heights, MI 49444

Andrea M. Christensen, A.A.G.